IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01389-WJM-KLM

GENETIC TECHNOLOGIES LIMITED, an Australian corporation,

    Plaintiff and Counter Defendant,

v.

AGILENT TECHNOLOGIES, INC., a Delaware corporation,
MERIAL L.L.C., a Delaware limited liability company,
PFIZER INC., a Delaware corporation,
GENESEEK, INC., a Nebraska corporation, and
GLAXOSMITHKLINE LLC, a Delaware corporation,

    Defendants;

BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation,

    Defendant and Counter Claimant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant Agilent Technologies, Inc.'s Motion to Dismiss [#174] and Motion to Transfer Case [#178], Defendant Bristol-Myers Squibb Company's Motion to Sever and Transfer Case [#175], Defendant Pfizer, Inc.'s Motion to Dismiss [#179] and Motion to Sever and Transfer Case [#180], Defendant Merial L.L.C.'s Motion to Dismiss for Improper Venue [#181] (sealed at [#166]), Defendant GeneSeek, Inc.'s Motion to Dismiss [#194] and Motion to Sever and Transfer Case [#195], and Defendant GlaxoSmithKline LLC's Motion to Sever and Transfer Case [#255] and Motion to Dismiss [#256]. All parties have consented to the partial exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c)(1). [#305]. The Motions are fully briefed and

1

ripe for review. The Court has reviewed the briefing, the case record, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court **GRANTS** Defendant Agilent Technologies, Inc.'s Motion to Transfer Case [#178], Defendant Bristol-Myers Squibb Company's Motion to Sever and Transfer Case [#175], Defendant Pfizer, Inc.'s Motion to Sever and Transfer Case [#180], Defendant GeneSeek, Inc.'s Motion to Sever and Transfer Case [#195], and Defendant GlaxoSmithKline LLC's Motion to Sever and Transfer Case [#255], and **GRANTS IN PART** Defendant Merial L.L.C.'s Motion to Dismiss for Improper Venue [#181]. The Court finds that these Defendants were improperly joined, Plaintiff's claims against them must be severed, and the severed claims must be transferred as instructed herein. All remaining motions are **DENIED WITHOUT PREJUDICE AS MOOT**.

I.  **Motions to Dismiss**

The Court incorporates by reference the factual background stated in its Order Denying Motion for Stay issued October 20, 2011 [#196]. Defendants Agilent Technologies, Inc. ("Agilent"), Pfizer, Inc. ("Pfizer"), GeneSeek, Inc. ("GeneSeek"), and GlaxoSmithKline LLC ("GSK") have filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* [## 174, 179, 194, 256]. Dismissal of claims pursuant to Rule 12(b)(6) is a final adjudication on the merits. *E.g., State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 518 n.8 (10th Cir. 1994) ("A ruling that a party has failed to state a claim on which relief may be granted is a decision on the merits with full res judicata effect."); *In re Johnson Elec. N. Amer., Inc.*, 979 F.2d 215, 1992 WL 276680, at *2 (Fed. Cir. 1992) (unpublished) (dismissal for failure to state a claim "is on the merits and is accorded res judicata effect").

2

"[J]urisdictional questions ordinarily must precede merits determinations in dispositional order." *Sinochem Int'l Co. Ltd. V. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted). The Court thus first adjudicates these Defendants' jurisdictional motions to sever and transfer, and as further explained below, orders severance and transfer of the claims, thereby mooting the Rule 12(b)(6) motions. *See ATK Launch Sys., Inc. v. U.S. Envtl. Prot. Agency*, 651 F.3d 1194, 1200 (10th Cir. 2011) ("Given this court's ruling that the petitions be transferred to the D.C. Circuit, there is no occasion to consider the parties' arguments on the merits.").

## II.     Joinder

Defendants Agilent, Bristol-Myers Squibb Company ("Bristol-Myers"), Pfizer, Merial L.L.C. ("Merial"), GeneSeek, and GSK (collectively, "Defendants") raise identical grounds in support of their positions that they each are improperly joined as defendants to this lawsuit. *See* [## 175, 178, 180, 181 (sealed at [#166]), 195, 255]. Defendants assert that the claims against them do not arise from the same transaction or occurrence as required by Fed. R. Civ. P. 20, because the only commonality between them is Plaintiff's allegation that they each infringed the same patent, '179. [#175] at 2; [#178] at 10-11; [#180] at 5-6; [#166] at 10-11; [#195] at 2; [#255] at 11.

Plaintiff's responses to each motion for severance are likewise identical, and recently summarized by the Court in its Order severing and transferring Plaintiff's claims against Defendant 454 Life Sciences Corporation (the "March 23, 2012 Order"). [#312]. Plaintiff states that it properly joined the Defendants in this case "because the claims asserted against each [are] for infringement of the '179 Patent and award of a reasonable royalty." [#199] at 15 (*Resp.* to [#175]); [#200] at 15 (*Resp.* to [#178]); [#203] at 13 (*Resp.* to [#180]);

3

[#205] at 17 (*Resp.* to [#166]); [#232] at 15 (*Resp.* to [#195]); [#271] at 15 (*Resp.* to [#255]). However, Plaintiff concedes that "each Defendant is alleged to have infringed in different genes using different equipment and reagents." *Id.* Nevertheless, Plaintiff asserts that the logical relationship test and practical considerations of efficiency and consistency dictate denial of the motions for severance. *See id.*

As explained by the Court in the March 23, 2012 Order, application of either the majority (as codified in the America Invents Act) or minority approach (referring to the logical relationship test) results in a finding of improper joinder. *See* [#312] at 7. For the reasons stated in the March 23, 2012 Order, the Court finds that the remaining Defendants were improperly joined in this lawsuit, and Plaintiff's claims against them must be severed.

**III.    Transfer**

As explained in the March 23, 2012 Order, "[c]hange of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)." *In re TS Tech USA Corp.*, 551 F.3d at 1319. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The decision whether to transfer an action lies within the sound discretion of the trial judge." *Telecomm. Sys., Inc. v. TracBeam, L.L.C.*, No. 11-cv-02519-WYD-MJW, 2012 WL 371578, at *1 (D. Colo. Feb. 6, 2012) (citing *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978)).

"Section 1404(a) only authorizes the transfer of an entire action, not individual claims." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 929 F.2d 1509, 1518 (10th Cir. 1991) (citation omitted). However, severance of claims pursuant to Rule 21 results in the

4

creation of a new action separate from the original lawsuit. *Chrysler Credit Corp.*, 929 F.2d at 1519. The Court may transfer the severed action while retaining jurisdiction over the remaining action. *Id.* ("The severed case [may be] transferred in its entirety while the retained case remains in its entirety in the transferor court.")

The Court evaluates requests for transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Telecomm. Sys., Inc.*, 2012 WL 371578 at *1 (internal quotation and citations omitted). With the exception of the convenience of each Defendant's witnesses and evidence related to the requested forum, as well as the requested forum's docket congestion, the factors evaluated by the parties in the Motions at issue are not materially different from those discussed in the March 23, 2012 Order. *See* [#312] at 14-19 (discussing Plaintiff's choice of forum, convenience to witnesses and regarding evidence, costs, docket congestion, localized interest, and general efficiency). Thus, the Court analyzes each Defendant's respective request for transfer in turn, in terms of the convenience factor (and inherently related cost factor) and congestion factor. The Court continues to decline to defer to Plaintiff's choice of forum in the absence of a localized interest, for the reasons stated in the March 23, 2012 Order. [#312] at 15-17, 19.

### A. Agilent

Agilent requests that the Court transfer the severed claims against it to the Northern District of California. *Motion*, [#178] at 15. Agilent is incorporated under the laws of Delaware, and its principal place of business is in Santa Clara, California. [#150] at 2. Agilent concedes that the Northern District of California may exercise personal jurisdiction over it, and that venue is proper there. [#178] at 15. Agilent attests that Plaintiff has

initiated and litigated a case regarding the same patent at issue in the Northern District of California, thereby demonstrating the convenience of the requested forum. *Id.* Agilent represents that "its witnesses, and most of its evidence are all located in Northern California." *Id.* at 17. Regarding costs, because Agilent's witnesses and evidence are located in Northern California, Agilent claims that costs will be less if transfer is granted. *Id.* at 18-19. Agilent represents that the docket loads of this District and the Northern District of California are comparable. *Id.* at 20.

In its Response, Plaintiff essentially restates the same arguments it made against transfer of Defendant 454's severed claims, namely that Agilent does not carry its burden of identifying witnesses and evidence in Northern California with specificity. *See Resp.*, [#200] at 19-20. Regarding docket congestion, Plaintiff offers statistics from 2010 indicating that the median time from filing to disposition in Colorado was 5.8 months and 9.8 months in California. *Id.* at 20. The weighted cases pending per judge at that time was 515 in Colorado and 532 in California. *Id.* at 20-21.

In its Reply, Agilent counters by stating that it identified four witnesses who reside in the Northern District of California in its Motion (Jim Collins, Mike Caren, Karen Shannon, and Tom DeVore ([#178-2] at 2)), and in any event, Plaintiff's allegations against Agilent are deficient, leaving Agilent "to guess at which products and versions thereof are relevant." *Reply*, [#217] at 13. Agilent emphasizes again that "the vast majority of witnesses will be found in the Northern District of California." *Id.*

Pursuant to the statistics proffered by Plaintiff, the congestion factor weighs slightly against transfer. However, the Court finds that Agilent demonstrates that the convenience and cost factors weigh heavily in favor of transfer. For substantially the same reasons

6

articulated in the March 23, 2012 Order, the Court concludes that transfer of the severed claims against Agilent to the Northern District of California is proper.

B.    **Bristol-Myers**

Bristol-Myers requests that the Court transfer the severed claims against it to the District of Delaware. *Motion*, [#175] at 11. Bristol-Myers further asks that the Court sever and transfer the counterclaims it has brought against Plaintiff. *Id.* at 1. Bristol-Myers is incorporated pursuant to the laws of Delaware, and it "resides" in Delaware. *Id.* at 11, 12. Bristol-Myers concedes that it is subject to personal jurisdiction in the District of Delaware, and venue is proper there. *Id.* at 12. Bristol-Myers represents that the relevant witnesses and documents are located in New Jersey and Connecticut, and no evidence is located in Colorado. *Id.* at 12-13. Bristol-Myers avers that "[a] Delaware forum would be materially more convenient for the vast majority of likely witnesses." *Id.* at 13. Further, Bristol-Myers believes that potential third parties referenced by Plaintiff in relation to its claims against Bristol-Myers would likely be subject to the District of Delaware's subpoena power. *Id.*

In its Response, Plaintiff essentially restates the same arguments it made regarding transfer of the severed claims against Defendants 454 and Agilent, namely that Bristol-Myers does not carry its burden of identifying witnesses and evidence in Delaware with specificity. *See Resp.*, [#199] at 19-20. Regarding docket congestion, Plaintiff offers statistics from 2010 indicating that the median time from filing to disposition in Colorado was 5.8 months and 9.8 months in Delaware. *Id.* at 20. The weighted cases pending per judge at that time was 515 in Colorado and 519 in Delaware. *Id.* at 20-21.

In its Reply, Bristol-Myers emphasizes its position that the claims against it bear no meaningful connection to the present forum. *Reply*, [#219] at 8-9. Bristol-Myers explains

7

that "any conceivable [Bristol-Myers] witnesses or documents that may relate to [Plaintiff's] allegations are in East Coast locations within a short distance of the Delaware court." *Id.* at 9.

Pursuant to the statistics proffered by Plaintiff, the congestion factor weighs slightly against transfer. However, the Court finds that Bristol-Myers demonstrates that the convenience and cost factors weigh heavily in favor of transfer, considering the distinct absence of connection to Colorado as the forum state, and that Bristol-Myers is incorporated and is subject to process in Delaware, with its witnesses and relevant documentation located much closer to Delaware than to Colorado. For substantially the same reasons articulated in the March 23, 2012 Order, the Court concludes that transfer of the severed claims against Bristol-Myers, as well as the counterclaims brought by Bristol-Myers against Plaintiff, to the District of Delaware is proper.

### C. Pfizer

Pfizer requests that the Court transfer the severed claims against it to either the District of Delaware or the Southern District of New York. *Motion*, [#180] at 8. Pfizer is incorporated under the laws of Delaware, and its principal place of business is in New York, New York. [#150] at 3. Pfizer concedes personal jurisdiction and the propriety of venue in either location. [#180] at 8. In sum, Pfizer's arguments echo that presented by the other Defendants, namely that the absence of any meaningful connection to the forum state dictates transfer to the location most convenient for the Defendants' respective witnesses and other evidence. *See id.* at 8-10.

In its Response, Plaintiff restates the same arguments that it made regarding transfer of the severed claims against the other Defendants. *See Resp.,* [#203] at 16-17.

Regarding docket congestion, Plaintiff offers statistics from 2010 indicating that the median time from filing to disposition in Colorado was 5.8 months, 9.8 months in Delaware, and 8.1 months in the Southern District of New York. *Id.* at 18. The weighted cases pending per judge at that time was 515 in Colorado, 519 in Delaware, and 432 in the Southern District of New York. *Id.* at 18.

In its Reply, Pfizer blames Plaintiff for its inability to specifically identify witnesses or documentation, as it contends that Plaintiff "does not include facts [in the First Amended Complaint] specifying a single infringing act by Pfizer occurring within the United States." *Reply*, [#221] at 6-7. Pfizer reiterates that potential witnesses who are knowledgeable about the products identified in the First Amended Complaint, the pharmaceutical drugs Camptosar and Zoloft, "are located at Pfizer's offices in New York and facilities on the East Coast, and that no potential witnesses or documents are likely to be located in Colorado." *Id.* at 7.

Pursuant to the statistics proffered by Plaintiff, the congestion factor slightly favors transfer to the Southern District of New York. However, the Court finds that the District of Delaware is the preferred venue, in light of the Court's decision to also transfer the severed claims against Defendants Bristol-Myers and Merial to the District of Delaware. Because Pfizer concedes the propriety of venue and the exercise of personal jurisdiction by the District of Delaware, and there does not appear to be any meaningful difference in terms of convenience for witnesses between Delaware and New York, the Court believes that transfer to Delaware, where Plaintiff's claims against Bristol-Meyers and Merial will also be pending, is most efficient. Therefore, for these and for substantially the same reasons articulated in the March 23, 2012 Order, the Court concludes that transfer of the severed

claims against Pfizer to the District of Delaware is proper.

**D.     Merial**

Merial requests that the Court dismiss the claims against it on the basis of improper venue, or in the alternative, on the basis of improper joinder.  *See Motion*, [#166] (sealed). However, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21.  As explained above, the Court finds that Merial was indeed improperly joined in this action, but the proper result is severance of Plaintiff's claims against Merial.  The Court construes Merial's request for dismissal due to improper venue as a request for transfer of the severed claims to the District of Delaware.

Merial contends that Plaintiff "previously released and covenanted not to sue Merial with respect to, *inter alia*, all claims of infringement involving the '179 patent." [#166] at 3. Merial asserts that the release agreement (the "Release") contains a choice-of-forum clause which identifies the District of Delaware as the appropriate forum for any dispute arising from the agreement.  *Id.* at 5.  Merial avers that its defense is based on the Release; thus, the proper venue for the claims against Merial is the District of Delaware.  *Id.* at 9. Merial's Reply restates its arguments presented in its Motion.  *See* [#225] (sealed).

Plaintiff challenges Merial's right to enforce the Release.  *Resp.*, [#205] (sealed) at 9.  Plaintiff argues that because Merial is not a signatory to the Release, it may not invoke the forum selection clause.  *Id.*  In any event, Plaintiff asks that the Court transfer the case to Delaware, in lieu of outright dismissal.  *Id.* at 13-14.

Merial is incorporated under the laws of Delaware, and its principal place of business is in Duluth, Georgia.  [#150] at 3.  Without ruling on the merits of Merial's defense premised on the Release, the Court finds that transfer of the severed claims against Merial

10

to the District of Delaware is an appropriate resolution of Merial's motion. The absence of any connection of the dispute to Colorado is established as described above, Merial attests that the proper forum for resolving disputes arising from the Release is the District of Delaware, Merial is incorporated pursuant to the laws of the State of Delaware, and Plaintiff is amenable to the transfer of the claims to Delaware. For these reasons, and pursuant to 28 U.S.C. § 1404(a), the Court finds that Plaintiff could have brought its claims against Merial in the District of Delaware. Therefore, the Court concludes that transfer of the severed claims against Merial to the District of Delaware is proper. *See Chrysler Credit Corp.*, 928 F.2d at 1515 (the district court retains considerable discretion in determining whether transfer is appropriate). This transfer order does not preclude Merial from raising its defenses premised on the Release in the District of Delaware.

**E.    GeneSeek**

GeneSeek requests that the Court transfer the severed claims against it to the District of Nebraska. *Motion*, [#195] at 3. GeneSeek is incorporated under the laws of Nebraska, and its principal place of business is in Lincoln, Nebraska. [#150] at 2. GeneSeek concedes personal jurisdiction and the propriety of venue in the District of Nebraska. [#195] at 9. GeneSeek represents that current and former employees who may be called as witnesses, as well as documents relevant to the claims against it, are located in Nebraska. *Id.* at 11-12. GeneSeek states that current statistics indicate that the number of weighted cases per judge in Nebraska is 479, compared to 651 in Colorado, which also favors transfer. *Id.* at 13. In its Reply, GeneSeek emphasizes that no meaningful connection exists as to the claims against it and the present forum. *Reply*, [#284] at 6.

In Response, Plaintiff restates the same arguments that it made regarding transfer of the severed claims against the other Defendants, namely that GeneSeek does not carry its burden of identifying witnesses and evidence in Nebraska with specificity. *See Resp.*, [#232] at 19. Regarding docket congestion, Plaintiff offers statistics from 2010 indicating that the median time from filing to disposition in Colorado was 5.8 months, compared to 8.6 months in Nebraska. *Id.* at 20. The number of weighted cases pending per judge at that time was 515 in Colorado and 285 in Nebraska. *Id.*

Pursuant to the more recent statistics proffered by GeneSeek, the congestion factor favors transfer to the District of Nebraska. The Court further finds that GeneSeek demonstrates that the convenience and cost factors weigh heavily in favor of transfer, considering the distinct absence of connection to Colorado as the forum state, that GeneSeek is incorporated in Nebraska, and that its witnesses and relevant documentation are located in Nebraska. For substantially the same reasons articulated in the March 23, 2012 Order, the Court concludes that transfer of the severed claims against GeneSeek to the District of Nebraska is proper.

**F.     GSK**

GSK requests that the Court transfer the severed claims against it to the Middle District of North Carolina. *Motion*, [#255] at 15. GSK is incorporated under the laws of Delaware, and its principal place of business is in Philadelphia, Pennsylvania. [#150] at 3. GSK states that the allegedly infringing activities took place in Research Triangle Park, North Carolina, which is located in the Middle District, and that the Middle District is also where its relevant witnesses and documents are located. [#255] at 16. GSK attests that the evidence related to the pharmaceutical drugs at issue, Ziagen (Abacavir) and Tykerb

12

(Lapatinib), as well as its genotyping facilities, are located in North Carolina. *Id.* at 17. GSK claims that "while it will cost GSK considerably more to bring witnesses and documents to Colorado than to North Carolina, it will make little difference cost-wise to [Plaintiff] to bring witnesses and documents from Australia or the United Kingdom to North Carolina, instead of Colorado." *Id.* at 18.

In its Response, Plaintiff restates the same arguments that it made regarding transfer of the severed claims against the other Defendants, namely that GSK does not carry its burden of identifying witnesses and evidence in North Carolina with specificity. *See Resp.*, [#271] at 19. Regarding docket congestion, Plaintiff offers statistics from 2010 indicating that the median time from filing to disposition in Colorado was 5.8 months, compared to 8.3 months in the Middle District of North Carolina. *Id.* at 20. The weighted cases pending per judge at that time was 515 in Colorado and 254 in the Middle District of North Carolina. *Id.* at 20-21.

In its Reply, GSK contends that the existence of the single witness identified by Plaintiff in Colorado (the referred-to Vice President) "does not outweigh the burden on the multiple GSK employees who would need to travel from North Carolina to testify in Colorado, if this case were to proceed in this forum." *Reply*, [#279] at 12. GSK asserts that none of the venue factors weigh in favor of keeping the claims against it in Colorado. *Id.* at 14.

The Court agrees. Pursuant to the statistics proffered by Plaintiff, the congestion factor slightly favors transfer. The Court further finds that GSK demonstrates that the convenience and cost factors weigh heavily in favor of transfer. For substantially the same reasons articulated in the March 23, 2012 Order, the Court concludes that transfer of the

13

severed claims against GSK to the Middle District of North Carolina is proper.

**IV.    Conclusion**

For the reasons stated above and in the March 23, 2012 Order,

IT IS HEREBY **ORDERED** that Defendant Agilent Technologies, Inc.'s Motion to Transfer Case [#178], Defendant Bristol-Myers Squibb Company's Motion to Sever and Transfer Case [#175], Defendant Pfizer, Inc.'s Motion to Sever and Transfer Case [#180], Defendant Merial L.L.C.'s Motion to Dismiss for Improper Venue [#181] (sealed [#166]), Defendant GeneSeek, Inc.'s Motion to Sever and Transfer Case [#195], and Defendant GlaxoSmithKline LLC's Motion to Sever and Transfer Case [#255] are **GRANTED** as follows.  The Court finds that these Defendants were **MISJOINED** to this action, thus Plaintiff's claims against them are **SEVERED**.

IT IS FURTHER **ORDERED** that the Clerk of Court is directed to open a new case for the severed claims against each remaining Defendant (Agilent, Bristol-Myers, Pfizer, Merial, GeneSeek, and GSK), for a total of six new cases.  The Clerk of Court is directed to file a copy of the Amended Complaint [#150], the Scheduling Order [#258], the March 23, 2012 Order [#312], and a copy of this Order in each new action. The Scheduling Order will govern the severed claims until otherwise ordered by the respective transferee court.

IT IS FURTHER **ORDERED** that, in the new action pertaining only to Defendant Bristol-Myers, the Clerk of Court is directed to file a copy of the Answer and Counterclaims [#173] and the Reply to Counterclaims [#198], in addition to the docket entries identified above.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **TRANSFER** the complete case file containing the severed claims against Defendant Agilent to the Northern District of California; against Defendant Bristol-Myers to the District of Delaware; against Defendant Pfizer to the District of Delaware; against Defendant Merial to the District of Delaware; against Defendant GeneSeek to the District of Nebraska; and against Defendant GSK to the Middle District of North Carolina.

IT IS FURTHER **ORDERED** that Plaintiff's request for pre-trial consolidation is **DENIED WITHOUT PREJUDICE** as to Defendants Bristol-Myers, Pfizer, and Merial.

IT IS FURTHER **ORDERED** that Defendant Agilent Technologies, Inc.'s Motion to Dismiss [#174], Defendant Pfizer, Inc.'s Motion to Dismiss [#179], Defendant GeneSeek, Inc.'s Motion to Dismiss [#194], Defendant GlaxoSmithKline LLC's Motion to Dismiss [#256], Defendants' Combined Renewed Motion for Stay [#290], Defendants' Motion for Protective Order [#296], and Defendant Merial L.L.C.'s Unopposed Motion to Consider Supplemental Authority in Support of Its Pending Motion to Dismiss for Improper Venue or Improper Joinder [#309] are **DENIED WITHOUT PREJUDICE AS MOOT**.

Accordingly, the case is hereby **CLOSED**.

Dated: March 28, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge